IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JAMES CATTERALL, | )<br>)<br>) |
| *Plaintiff*, | ) Case No. 2:23-cv-1145<br>) |
| vs. | )<br>) |
| TRULIEVE CANNABIS CORPORATION, | )<br>) |
| *Defendant*. | ) **JURY TRIAL DEMANDED**<br>) |

## COMPLAINT IN CIVIL ACTION

Plaintiff, James Catterall, by and through the undersigned counsel, now files this Complaint in Civil Action against Trulieve Cannabis Corporation, averring as follows:

## PARTIES

1. Plaintiff, James Catterall, (hereinafter "Plaintiff"), is an adult individual who resides at 126 Ray Drive, Rostraver, Pennsylvania 15012.

2. Defendant, Trulieve Cannabis Corporation, (hereinafter, "Defendant") is a national corporation spanning the United States with its address located at 6749 Ben Bostic Road, Quincy, FL 32351. Additionally, Trulieve has business operations located at 511 Industry Boulevard, McKeesport, Pennsylvania 15312 (hereinafter, the "Facility").

## JURISDICTION AND VENUE

3. This Court has federal question jurisdiction under 28 U.S.C. § 1331 because Plaintiff brings this lawsuit asserting that Defendant violated the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601 *et seq.* (hereinafter, "FMLA").

4. Venue is also proper in this Court, pursuant to 28 U.S.C. § 1391(b)(2), because a substantial part of the events and omissions giving rise to the claim asserted herein occurred in/at the Facility, which is within the geographic confines of the United States District Court for the Western District of Pennsylvania.

5. This Court has personal jurisdiction over Defendant because it routinely and regularly conducts business in the Commonwealth of Pennsylvania and it routinely and regularly solicits business in Pennsylvania. Further, as averred more fully below, Defendant violated statutory provisions of the FMLA and all the events giving rise to its unlawful conduct, including the harm that Plaintiff sustained therefrom, occurred in Pennsylvania. As such, this Court, at a bare minimum, may exercise personal jurisdiction over Defendant because it has the required minimum contacts with this forum in satisfaction of the Due Process Clause of the United States Constitution.

**PROCEDURAL HISTORY AND FACTUAL ALLEGATIONS**

6. On or about October 7, 2019, Plaintiff commenced his employment with PurePenn LLC, selling products under the brand name "Moxie". At this time, Plaintiff worked within the position of "cultivation technician" (the "Cultivation Technician Position") wherein Plaintiff would engage in the routine growth, care, and eventual harvest of Defendant's agricultural products. Within the Cultivation Technician Position, Plaintiff was employed within a "part-time" capacity and was compensated on an hourly basis of $14.50. In December of 2019, Plaintiff became a full-time employee, working approximately 37.5 hours a week. In addition to becoming a full-time employee, Plaintiff was also afforded various benefits such as health and dental insurance. On September 16, 2020, Defendant purchased Moxie/PurePenn LLC and subsequently Defendant continued employing Plaintiff without interruption to Plaintiff's employment.

7.      In May of 2021, Plaintiff obtained the position of "cultivation supervisor" (the "Cultivation Supervisor Position") wherein he began to work 40 hours a week and became responsible for covering a larger amount of the operations related to the care of Defendant's products. Within the role, he applied different irrigation and growing techniques to the products depending on the style required to maximize output.

8.      On May 29, 2022, and after more than two years of dedication to Defendant's organization, Plaintiff was promoted to an "irrigation supervisor" position (the "Irrigation Supervisor Position"). Correspondingly, Plaintiff's compensation was changed to a salary-basis of $55,000.00 annually. At the Irrigation Supervisor Position, Plaintiff was required to manage all irrigation duties for all buildings and territory at the Facility.

9.      At this time, Plaintiff increased the number of hours he worked to 40 hours per week.

10.     In October of 2022, at a company meeting, Plaintiff informed Human Resources Representative, Frank Lo-Castro (hereinafter "Mr. Lo-Castro"), assistant General Manager, Mark Grim (hereinafter "Mr. Grim"), General Manager, Jennifer Phillips (hereinafter "Ms. Phillips"), and Cultivation Managers, Samantha Balogh (hereinafter "Ms. Balogh") and John Critser (hereinafter "Mr. Critser"), that Plaintiff's fiancée was due to give birth (by C-Section resulting in a predictable birth date). Correspondingly, Plaintiff informed those individuals that he would be formally requesting to utilize a portion of his twelve (12) weeks of allowable leave pursuant to the FMLA starting on or near March 30, 2023 (hereinafter, the "FMLA Leave"). Further, Plaintiff indicated, through the limited duration of the timeframe to which the FMLA Leave spanned, that he would return in four (4) weeks thereafter.[1]

---

[1] As discussed in greater detail within Count I delineated below, Plaintiff was a qualified employee under the purview of the FMLA and was thus entitled to take up to twelve (12) weeks off per year for qualifying events.

11. On January 1, 2023, Plaintiff, along with two co-workers, Ashley Brooks (hereinafter "Ms. Brooks") and Trina Haines (hereinafter "Ms. Haines"), were promoted to identical "Plant Health Supervisors" positions (hereinafter, the "Health Supervisor Positions") within Defendant's organization.

12. In mid-January of 2023, Defendant opened a job position titled "harvest manager" (the "Harvest Manager Position") wherein upon information and believe, included a pay increase to around to a $75,000.00 salary. Plaintiff applied for this position but did not receive an interview. Instead, Defendant hired an outside candidate. The duties of the Harvest Manager Position entailed the harvest/post-harvest process, or in other words, taking care of the product after the growth cycle (i.e. drying, cutting, weighing and curing the product). Throughout the entirety of Plaintiff's employment, Plaintiff was engaging in similar duties of a harvest manager that made Plaintiff a supremely qualified individual for the Harvest Manager Position.

13. Despite Plaintiff's application for the Harvest Manager Position, his tenure with Defendant, and his qualifications, Defendant refused to interview Plaintiff and instead hired an outside candidate. As such, Defendant denied Plaintiff both an increase in pay and from advancing within the organizational hierarchy.

14. Upon being denied an interview, Plaintiff sent an email to Mr. Lo-Castro inquiring as to why he was denied the opportunity to interview with for the Harvest Manager Position. Mr. Mr. Lo-Castro indicated to Plaintiff he was not involved in the hiring process. However, in a subsequent meeting, Mr. Critser informed Plaintiff he did not have enough experience to receive an interview despite the above aforementioned excessive qualifications, and despite Plaintiff personally notifying Mr. Crister and Ms. Balogh of his application days after the position was posted.

15. On February 27, 2023, and notably during the same time the Defendant opened the Harvest Manager Position, Plaintiff requested and received confirmation of his request to take FMLA from Sedgwick, the organization that administers Defendant's FMLA policies and procedures.

16. Plaintiff was approved to take FMLA Leave through the Sedgwick case manager, Pamela Brewer (hereinafter "Ms. Brewer")[2].

17. On March 30, 2023, Plaintiff's fiancée gave birth and Plaintiff took his requested and approved FMLA Leave at that time.

18. Plaintiff had also intended to take additional leave as events and responsibilities warranted during the early weeks and months of his child's life. Plaintiff voiced this intent to Ms. Balogh, indicating to her that he did not take his full 12-week allotment initially because he knew he would likely need to take more leave as was necessary during his child's infancy.

19. Notably, Plaintiff's two co-workers as described in paragraph 12 hereinabove (one younger and single and the other older with grown children) never used FMLA and did not exhibit a present need to invoke such rights.

20. On or about May 1, 2023, Plaintiff returned from the FMLA Leave and he was met with immediate hostility from his coworkers. Specifically, his co-workers avoided him and refused to socially interact with him. Further, Plaintiff's duties were divided amongst other employees in a manner that illustrated Plaintiff no longer possessed a role within Defendant's operations in contravention to the core protections of the FMLA.

---

[2] Plaintiff received a text message on April 6, 2023, from Sedgwick confirming that his FMLA had been approved for the period of 3/30/2023 through 4/30/2023.

21.     On or about May 5, 2023, within one (1) week of Plaintiff's return from FMLA Leave, Plaintiff was summoned to a meeting with Ms. Balogh and Mr. Lo-Castro's successor as Human Resources Representative, Devin Failor (hereinafter "Mr. Failor").

22.     At the meeting, which took place at the end of the workday, Plaintiff was informed by Mr. Failor that his position with the company was "being eliminated" and that his employment was terminated effective immediately. Defendant refused Plaintiff any and all opportunities to continue working within its enterprise and requested he turn over all his work materials and leave the Facility immediately. Because of the sudden notice and timing, Plaintiff was left with no choice but to leave at the end of the workday as a terminated former employee.

23.     Upon information and belief, Ms. Brooks and Ms. Haines continued to be employed within the Plant Health Supervisor Positions. It is inherently obvious under the facts and circumstances that Plaintiff was selected for termination, over Ms. Brooks and Ms. Haines, due to the FMLA Leave.

## COUNT I
## RETALIATORY TERMINATION IN VIOLATION OF THE FMLA
## 29 U.S.C. § 2601 *et seq.*

24.     Plaintiff incorporates the allegations contained in the paragraphs set forth above, as if fully set forth at length herein.

25.     The FMLA was enacted to provide entitled employees to take reasonable leave of medical reasons and familial events while still balancing and accommodating the interests of the employer. *See* 29 U.S.C. § 2601, *et seq.*

26.     As such, the FMLA entitles qualified employees of specific employers to take twelve (12) weeks of job-protected leave following the occurrence of various circumstances as delineated within the statute. *See* 29 U.S.C. § 2601, *et seq.*

27. For purposes of the FMLA, an "eligible employee" means an employee who has been employed "(i) for at least 12 months by the employer with respect to whom leave is requested; and (ii) for at least 1,250 hours of service with such employer during the previous 12-month period." 29 U.S.C. § 2611(2)(A).

28. In turn, the FMLA defines an "employer" to mean "any person engaged in commerce or an in any industry affecting commerce who employs 50 or more employees for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year." 29 U.S.C. § 2611(4)(A).

29. Additionally, the definition of an "employee" under the FMLA is not satisfied if any employee works at a worksite of an employer in which such employer does not employ at least 50 employees within 75 miles of such worksite. 29 U.S.C. § 2611(2)(B). In other words, an employer must employ at least 50 employees within a range of 75 miles of the employee's worksite for an employee to be entitled to FMLA.

30. Defendant is a national corporation with worksites located throughout the United States and more specifically, throughout Pennsylvania. Upon information and belief, the Defendant employs fifty (50) or more employees each working day during each of twenty (20) or more calendar workweeks in the calendar year within a 75-mile range of the Facility.

31. Therefore, Defendant is an employer pursuant to 29 U.S.C. § 2611(4)(A).

32. From most of 2019 and through 2022, Plaintiff had been working for Defendant as a full-time hourly employee. In May of 2022, Plaintiff was promoted to the Irrigation Supervisor Position. Prior to the time Plaintiff had requested leave, he had worked for more than the required 1,250 hours of service in the previous 12-month period. Therefore, Plaintiff is an "employee" pursuant to 29 U.S.C. § 2611(4)(A).

33. Given the above, Plaintiff was entitled to twelve (12) workweeks of leave pursuant to the FMLA for qualified health and familial related circumstances. The FMLA delineates various approved scenarios for leave under the FMLA and the birth of a child is a specifically permitted circumstance within the plain language of the FMLA itself. 29 U.S.C. § 2612(a)(1)(A).

34. As such, Plaintiff was appropriately entitled to utilize leave under the FMLA given his employment status with Defendant and the corresponding circumstances surrounding Plaintiff's need for leave.

35. Subsequent to the use and invocation of an individual's rights under the FMLA, the FMLA makes it unlawful for "any employer to discharge or in any other manner discriminate against any individual for opposing made unlawful". 29 U.S.C. § 2615(A)(2). This is commonly referred to as "retaliation" within the FMLA context. *See Ross v. Gilhuly*, 755 F.3d 185, 191 (3d Cir. 2014) citing *Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d 294.

36. To establish a *prima facie* FMLA retaliation claim, a plaintiff must show that (1) he invoked his right to FMLA-qualifying leave, (2) he suffered an adverse employment decision, and (3) the adverse action was causally related to his invocation of rights. *Ross*, 755 F.3d at 193.

37. On February 27, 2023, Defendant approved Plaintiff to take and utilize the FMLA Leave by and through its third-party administrator Sedgwick.

38. On March 30, 2023, Plaintiff's fiancée gave birth and Plaintiff took his requested and approved FMLA leave at that time. Correspondingly, Plaintiff invoked his rights to FMLA-qualifying leave.

39. On or about May 1, 2023, Plaintiff returned to Defendant's operations in an attempt to resume his longstanding employment relationship with Defendant. However, immediately upon

8

his return, Plaintiff noticed that the duties he previously performed were delegated to other individuals.

40. On or about May 5, 2023, Plaintiff was called to a meeting with Defendant's executives wherein Plaintiff was informed his employment was terminated effective immediately. Defendant refused the Plaintiff any and all opportunity to continue the employment relationship. Indeed, Plaintiff suffered the ultimate adverse employment action possible within the employer employee relationship and satisfies the second prong.

41. A sufficient causal nexus readily exists between the temporal proximity of the FMLA Leave, Plaintiff's return from said leave, Plaintiff's intent to further exercise his statutory FMLA rights, and the retaliatory termination which all occurred within a period of five (5) days. This nexus is heightened after consideration of the fact that Plaintiff's similarly situated coworkers who had not invoked their rights pursuant to the FMLA were treated more favorably than Plaintiff insofar as these individuals were not terminated.

42. As a direct and proximate result of Defendant's conduct described hereinabove, Plaintiff has suffered damages that include, but are not limited to, lost back pay and benefits and lost front pay and benefits, but also substantial emotional and physical distress, embarrassment and humiliation, pain and suffering, and is entitled to compensatory damages for these injuries, in addition to the tangible economic losses he suffered and will continue to suffer.

WHEREFORE, Plaintiff seeks the damages set forth in the *ad damnum* clause of this Complaint, *infra*.

## COUNT II
## FAILURE TO RESTORE TO AN EQUIVALENT POSITION
## IN VIOLATION OF THE FMLA
## 29 U.S.C. § 2601, *et seq*.

43. Plaintiff incorporates the allegations contained in the paragraphs set forth above, as if fully set forth at length herein.

44. The FMLA further provides that any employee who takes leave pursuant to the FMLA for the intended purpose of the leave shall be entitled to:

> (A) be restored to the position of employment held by the employee when the leave commenced; or
> (B) to be restored to an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment.

29 U.S.C. § 2614 of the FMLA.

45. As established above, Plaintiff was entitled to leave to address the birth of his newborn child and was appropriately entitled to the FMLA Leave given his status and tenure with Defendant's organization.

46. On March 30, 2023, and in accordance with Plaintiff's notifications and arrangement with Defendant, Plaintiff utilized the FMLA Leave.

47. On May 1, 2023, and once again in accordance with Plaintiff's arrangement with Defendant, Plaintiff returned to work. In accordance with the core provisions of the FMLA, Plaintiff was to be restored to his previous position or, at the very least, an equivalent position that offered the same terms and conditions of employment.

48. Instead, on May 5, 2023, after less than one week of Plaintiff's return, Plaintiff was informed his position was eliminated and that there were no additional employment opportunities with Defendant's organization for Plaintiff.

49. As such, Defendant failed to restore Plaintiff to Plaintiff's prior position or to an equivalent position in violation of 29 U.S.C. § 2614.

50. As a direct and proximate result of Defendant's conduct described hereinabove, Plaintiff has suffered damages that include, but are not limited to, lost back pay and benefits and lost front pay and benefits, but also substantial emotional and physical distress, embarrassment and humiliation, pain and suffering, and is entitled to compensatory damages for these injuries, in addition to the tangible economic losses he suffered and will continue to suffer.

WHEREFORE, Plaintiff seeks the damages set forth in the *ad damnum* clause of this Complaint, *infra*.

## COUNT III
## FAILURE TO PROMOTE IN VIOLATION OF THE FMLA – HARVEST MANAGER POSITION
## 29 U.S.C. § 2601 *et seq.*

51. Plaintiff incorporates the allegations contained in the paragraphs set forth above, as if fully set forth at length herein.

52. To establish a *prima facie* FMLA retaliation claim, a plaintiff must show that (1) he invoked his right to FMLA-qualifying leave, (2) he suffered an adverse employment decision, and (3) the adverse action was causally related to his invocation of rights. *Ross v. Gilhuly*, 755 F.3d 185, 193 (3d Cir. 2014).

53. In October of 2022, Plaintiff informed multiple senior management of Defendant that he was having a child near the end of March 2023 and would be requesting FMLA once the time was appropriate. Moreso, Plaintiff requested FMLA leave on approximately February 27, 2023, and was approved for said leave by and through Defendant's third-party administrator Sedgwick.

54. In mid-January of 2023, and subsequent to Plaintiff's notifications of intent to utilize leave pursuant to the FMLA, Defendant opened the Harvest Manager Position to applicants.

55. Plaintiff, given his excessive qualifications and seniority within Defendant's operations, applied for said position in hopes of further progressing within Defendant's organization.

56. However, Plaintiff was outright denied the opportunity to interview for the position and was informed he did not have the requisite experience as a reason he was denied such an interview. However, as detailed in this Complaint herein, Plaintiff held various job duties throughout his tenure with Defendant and possessed more than enough qualifications to be considered for the position. Subsequently, Defendant passed over Plaintiff for the position in question and hired an outside candidate for the role.

57. Plaintiff's denial of the opportunity of a promotion, the temporal proximity because of the FMLA Leave, and the adverse employment action taken by Defendant pursuant to the FMLA individually and/or collectively, establishes a sufficient causal nexus between Plaintiff's exercise of his statutory rights to FMLA leave and the retaliatory action on the part of Defendant because he had exercised those rights.

58. As a direct and proximate result of Defendant's conduct described hereinabove, Plaintiff has suffered damages that include, but are not limited to, lost back pay and benefits and lost front pay and benefits, but also substantial emotional and physical distress, embarrassment and humiliation, pain and suffering, and is entitled to compensatory damages for these injuries, in addition to the tangible economic losses he suffered and will continue to suffer.

WHEREFORE, Plaintiff seeks the damages set forth in the *ad damnum* clause of this Complaint, *infra.*

## **REQUEST FOR RELIEF**

Plaintiff, James Catterall, respectfully requests this Honorable Court to enter judgment in his favor, and against Defendant, Trulieve Cannabis Corporation, and prays for relief as follows:

1. Declare and find that Defendant committed the following acts:

    i. Violated the FMLA in retaliating against Plaintiff with adverse employment actions because he invoked his rights under the FMLA; and

    ii. Violated the FMLA in refusing to hire and/or consider Plaintiff for the Harvest Manager Position because he invoked his rights pursuant to the FMLA.

2. Award compensatory damages, including but not limited to past and future pecuniary and non-pecuniary losses, including suffering, mental anguish, inconvenience, and loss of enjoyment of life;

3. Award equitable relief in form of back pay and front pay;

4. Award punitive damages sufficient to deter Defendant from engaging in future conduct of a similar nature;

5. Award attorney's fees; and/or

6. Award pre-judgment and continuing interest as calculated by the Court.

**TRIAL BY JURY IS DEMANDED.**

Respectfully submitted,

**THE WORKERS' RIGHTS LAW GROUP, LLP**

Date: June 12, 2023                By: */s/ Kyle H. Steenland*
                                   Kyle H. Steenland (Pa. I.D. No. 327786)
                                   Jordan M. Kurth (Pa. I.D. No. 317804)

                                   The Workers' Rights Law Group, LLP
                                   Foster Plaza 10
                                   680 Andersen Drive, Suite 230
                                   Pittsburgh, PA 15220
                                   Telephone: 412.910.9592
                                   Fax: 412.910.7510
                                   kyle@workersrightslawgroup.com

                                   *Counsel for Plaintiff, James Catterall*

**<u>VERIFICATION</u>**

I, James Catterall, have read the foregoing allegations in the foregoing Complaint in Civil Action and verify that the statements therein are correct to the best of my personal knowledge, information and/or belief. I understand that this verification is made subject to the penalties of 18 Pa. C.S. § 4904, relating to unsworn falsification to authorities, which provides that if I knowingly make false averments, I may be subject to criminal penalties.

Dated: 06 / 12 / 2023

James Catterall

Doc ID: a061ffa79aa6109125b0d1b6322ff7b63fe3b1db